## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| DeSean Lamont Thomas, <br><br> Petitioner, <br><br> v. <br><br> Tom Roy, <br><br> Respondent. | Case No. 17-cv-2790 (DWF/HB) <br><br><br> **REPORT AND RECOMMENDATION** |

HILDY BOWBEER, United States Magistrate Judge

DeSean Lamont Thomas filed a petition for a writ of habeas corpus pursuant to 28 U.S.C § 2254 challenging a judgment entered against him in Minnesota state court. (Pet. Writ Habeas Corpus [Doc. No. 1].)[1] Thomas has additionally filed the following motions: Motion to Enforce Writ [Doc. No. 18], Expedited Motion to Enter Judgment or in the Alternative Release Petitioner Until Such Judgment is Entered [Doc. No. 19], Motion to Stay [Doc. No. 25], Motion to Stay in Abeyance [Doc. No. 29], Motion for Writ of Mandamus [Doc. No. 31], Motion to Amend Name and/or Correct Clerical Error [Doc. No. 37], Motion for Evidentiary Hearing [Doc. No. 42], Motion to Order the U.S. Marshal to Transport DeSean Lamont Thomas to USDC for Hearing on 07/27/2018 [Doc. No. 43], and Motion to Amend Petition [Doc. No. 48].  For the reasons set forth

---

[1]  For all docket entries cited herein, the Court refers to the page numbers assigned by the CM/ECF system, located at the top right of each page.

below, this Court recommends that Thomas's Petition and related motions be denied, and this matter be dismissed with prejudice.

# I.    BACKGROUND

Petitioner DeSean Thomas was found guilty of four counts of aiding and abetting second-degree murder following a trial by jury in Ramsey County. *State v. Thomas*, No. A15-1542, 2017 WL 1375278, at *3 (Minn. Ct. App. Apr. 17, 2017). Thomas appealed the conviction, but it was affirmed by the Minnesota Court of Appeals. (Pet. at 2 [Doc. No. 1].) Thomas sought review of his conviction from the Minnesota Supreme Court, but was denied. (App., Ex. 20 at 119[2] [Doc. No. 12-2].) On July 12, 2017, Thomas filed the instant petition for a writ of habeas corpus under 28 U.S.C § 2254 alleging he is in custody in violation of the Constitution and laws of the United States. (Pet. at 1 [Doc. No. 1].)

## A.    Facts of the Case

Leonard Christian, Sr. was shot and killed in the kitchen of his St. Paul home on March 30, 2012. *Thomas*, 2017 WL 1375278, at *1. The murder was the culmination of several days of feuding and violence between two rival St. Paul gangs – the "Gotta Have It" and the "Hustle Made Mafia." *Id.* Thomas, Juan Martinez and DeAngelo Wilson were all in the Hustle Made Mafia gang. *Id.* In the days leading up to the March 30

---

[2] Citations to the Appendix [Doc. Nos. 12-1 and 12-2] will be designated by the exhibit number (Ex.), the CM/ECF document number (Doc. No.) and by the page number assigned by the CM/ECF system at the time of filing, which appears in the upper righthand corner of each page.

shooting, the three gang associates were involved in several non-lethal shootings targeting members of Gotta Have It throughout St. Paul. *Id.* at *1, 2. Martinez and Wilson testified at trial that Thomas used a 30.30 rifle and Martinez used a .25 handgun throughout these shootings. *Id.* Police recovered shell casings for a 30.30 rifle and a .25 handgun at the scenes of the shootings, and witnesses reported seeing a purple minivan owned by Thomas's mother at the locations where the shootings occurred. *Id.* at *2-3.

On March 30, Thomas and his two accomplices went to Christian's home looking for his son, a purported member of the Gotta Have It. *Id.* at *1. Thomas knocked loudly on the back door of the home before firing several shots with the 30.30 rifle through the window of the back door. *Id.* Martinez also fired rounds from his .25 caliber pistol into the home through a side window of the house. *Id.* One of the bullets struck Christian in the chest, and he later died from his injuries. The medical examiner determined the fatal gunshot wound was caused by a rifle bullet. *Id.* Police found 30.30-caliber casings at the scene of the murder, and forensic analysis concluded that the casings matched the 30.30 casings found at the scenes of the other two St. Paul shootings from the previous few days and were fired from a Winchester Model 94 30.30 rifle that was later recovered from a creek in a St. Paul park. *Id.* at *3.

Martinez and Wilson testified that they had driven with Thomas in his mother's minivan to and from the shooting on March 30. They additionally testified that they parked the minivan after the shooting outside the apartment of a fellow Hustle Made Mafia member referred to as "R.S." *Id.* at *1, 2. Local authorities ticketed the vehicle on

3

March 30 and towed it to an impound lot the following day with the 30.30 rifle used in the fatal shooting still inside. *Id.* at *2. Wilson, R.S., and Thomas's mother recovered the vehicle from impound on April 2, 2012. *Id.* at *3. Wilson testified that he and R.S. removed the rifle without Thomas's mother's knowledge and dumped it in a creek in a St. Paul park. *Id.* A passerby found the rifle in the creek on April 2. *Id.* No fingerprints were recovered from the 30.30 rifle casings or from the rifle itself. *Id.*

Thomas purchased .25-caliber ammunition the day before the fatal shooting; surveillance video from the store showed Thomas, Wilson, and Martinez purchasing the .25-caliber ammunition, and a receipt for the ammunition was found in Thomas's mother's minivan. *Id.* at *2. Martinez testified he shoplifted the 30.30 ammunition used in the fatal shooting during that same trip to the store. *Id.*

A jury found Thomas guilty of second-degree intentional murder and second-degree unintentional murder on May 27, 2015. (Pet. at 1 [Doc. No. 1].) Wilson and Martinez pled guilty to their roles in Christian's death, and both testified against Thomas at his trial in exchange for the reduction or dismissal of charges for various other crimes. *Thomas*, 2017 WL 1375278, at *3. At trial, the State introduced evidence of prior shootings as prior-crimes evidence to establish Thomas's motive and to identify Thomas as the shooter. *Id.* at *1.

**B.    State Court Appeal Proceedings**

Thomas was convicted of second-degree murder of Leonard Christian, Sr., for the benefit of a gang and sentenced to 451 months in prison. (Resp. at 1, 2 [Doc. No. 11].) Thomas filed a postconviction petition in Ramsey County District Court on March 2,

2016, alleging that Martinez had recanted his testimony implicating Thomas.  (*Id.* at 2.)
At the postconviction hearing, Martinez indeed recanted his trial testimony against
Thomas, but the court denied the petition for postconviction relief after finding that
Martinez's recantation was not credible.  *Thomas*, 2017 WL 1375278, at *3.  Thomas
subsequently appealed his conviction to the Minnesota Court of Appeals.

During his appeal, Thomas was represented by a public defender, through whom
he asserted two primary bases for relief.  First, he argued the State failed to meet its
burden of proof because the only evidence it supplied of Thomas's guilt was
insufficiently corroborated accomplice testimony.  (App., Ex. 8 at 59-65 [Doc. No. 12-
1].)  Second, he argued the district court erred in allowing the accomplices to testify
about the two prior shootings because it was not relevant to either motive or intent, and
its probative value, if any, was far outweighed by the potential for unfair prejudice, i.e.,
that the jury would conclude Thomas was the shooter because he had been involved in
prior shootings.  (*Id.* at 46, 66-73.)

But Thomas also filed a pro se supplemental brief to the Minnesota Court of
Appeals (App., Ex. 9 [Doc. No. 12-2]) that advanced the following ten grounds for
postconviction relief:

1) The absence of evidence to corroborate the accomplices' testimony about
   Thomas's involvement in the murder could not be remedied by testimony from
   those same accomplices about prior bad acts.  (App., Ex. 9 at 7, 24-26.)

2) The district court erred in admitting prior bad acts testimony from accomplices
   because it did not alleviate any confusion regarding motive or intent. (*Id.* at 7-8,
   26-29.)

3) The district court erred in admitting prior bad acts testimony from accomplices because it was not clearly and convincingly credible, and its potential for unfair prejudice outweighed its probative value, so any doubts about its admission should have been resolved in favor of exclusion. (*Id.* at 8-9, 29-32.)

4) The district court erred in admitting prior bad acts testimony because the State's real purpose for introducing such testimony was not to prove motive or intent, but for the improper purpose of proving that Thomas was the shooter. (*Id.* at 9-10, 32-34.)

5) The district court erred in admitting prior bad acts testimony because it created the improper inference that Thomas acted in conformity with those prior acts and therefore was the shooter in the case at trial. (*Id.* at 10, 34.)

6) The district court erred in sustaining Thomas's conviction where there was insufficient corroboration of the accomplice testimony. (*Id.* at 10-11, 35-39.)

7) The district court abused its discretion when it denied post-conviction relief when one of the testifying accomplices recanted his testimony. (*Id.* at 11, 39-41.)

8) The district court violated Thomas's Due Process rights when it denied him the opportunity to cross-examine a police officer about internal affairs discipline reports. (*Id.* at 12, 41.)

9) The district court abused its discretion when it gave Thomas only 30 minutes to decide if he would proceed to trial after learning that a co-defendant had pled guilty shortly before trial was to commence. (*Id.* at 12, 42.)

10) The district court erred when it allowed the State to engage in *ex parte* communications with a co-defendant in the form of a grand jury subpoena. (*Id.* at 12, 42.)

After Respondent filed its brief with the Court of Appeals, Thomas moved, through his counsel, for permission to file a "Pro Se Supplemental Reply Brief," noting that "Respondent's … brief responds to several of appellant's pro se issues," and the pro se supplemental reply brief would "reply to the arguments made in respondent's brief" and thereby "aid the court's consideration and decision of the issues raised in appellant's

6

pro se supplemental brief." (App., Ex. 11, Motion to Accept Pro Se Supplemental Reply

Brief at 75 [Doc. No. 12-2].) The Court of Appeals granted the motion and accepted

Thomas's pro se reply brief "[t]o ensure that appellant's pro se issues are fully briefed."

(App., Ex. 12, Order at 78 [Doc. No. 12-2].)

The Minnesota Court of Appeals affirmed Thomas's conviction in an opinion

issued April 17, 2017. *Thomas*, 2017 WL 1375278. In that opinion, the court discussed

at length whether the conviction should be reversed on the ground that the evidence was

insufficient to corroborate the accomplice testimony, or on the ground that the trial court

erred in admitting evidence of the two prior shootings. It concluded the trial court had

not erred in either respect. The court specifically acknowledged that Thomas had raised

ten issues in his pro se supplemental brief but found that his issues one through six "relate

to the two issues" it had just discussed, *id.* at \*6, so it went on to address the remaining

four issues separately raised by Thomas and held that none of them constituted grounds

for reversal. *Id.* at \*6, 7.

Following the decision by the Minnesota Court of Appeals, Thomas determined to

continue in his appeals process without the assistance of counsel. (App., Ex. 16 at 104

[Doc. No. 12-2].) The Court of Appeals granted his motion to allow his attorney to

withdraw as counsel and allow Thomas to proceed pro se. (App., Ex. 17 at 107 [Doc.

No. 12-2].) Thomas also filed a motion asking the Court of Appeals to reconsider the

issues raised in his pro se supplemental brief. The Court of Appeals denied that motion

on the ground that under the Minnesota Rules of Civil Appellate Procedure, no petition

for rehearing is allowed in the Court of Appeals. Minn. R. Civ. Appl P. 140.01. (*Id.*)

7

Thomas then petitioned the Minnesota Supreme Court for review of his conviction. (App., Ex. 18 at 109-115 [Doc. No. 12-2].) In his Petition for Review, Thomas argued that the Court of Appeals did not adequately review the first six of his pro se arguments, and that by failing to do so the court violated his right to one full review of his conviction. (App., Ex. 18. at 110, 112-14 [Doc. No. 12-2].) He explained that while he and his attorney "argued the same issues," they argued them "on different merits," with Thomas (in his pro se supplemental brief) arguing them "from a grandeur [sic] perspective." (App., Ex. 18 at 113 [Doc. No. 12-2].) He contended that the Court of Appeals failed to "review the issues, from the perspective in which the party seeking relief [argued] the issue," noting that "it is not necessarily about the issue argued [but] about how the individual argues the issue & on what merit he/she argues the issue." *Id.* Thomas did not list and separately argue each of those six issues in his petition to the Minnesota Supreme Court as he did to the Minnesota Court of Appeals (App., Ex. 9 at 7-12, 24-39) or in the instant federal petition for habeas corpus (Notice at 6-10 [Doc. No. 1-1]), but instead offered examples of issues that he believed he and his attorney had argued from different perspectives, such as the sufficiency of the State's evidence corroborating the testimony of accomplices (App., Ex. 18 at 113-14 [Doc. No. 12-2]) and the admissibility of "*Spreigl* evidence."[3] (*Id.* at 114.)

The Minnesota Supreme Court denied Thomas's petition for further review on

---

[3] "*Spreigl* evidence" in Minnesota criminal cases refers to evidence of other crimes, wrongs, or acts admitted under Minnesota Rule of Evidence 404(b). The term takes its name from *State v. Spreigl,* 139 N.W.2d 167 (Minn. S. Ct. 1965).

June 28, 2017.  (App., Ex. 20 at 119 [Doc. No. 12-2].)  On July 6, 2017, Thomas

attempted to file with the Minnesota Supreme Court a "Request to Add Law to (PFR),"

in which he sought to raise state and federal equal protection arguments with regard to

(1) the Court of Appeals' failure to consider his pro se supplemental arguments and

(2) the trial court's rulings on the sufficiency of the evidence corroborating the

accomplice testimony. (Ex 99.8 at 3-6 [Doc. No. 1-2].)  The Supreme Court refused to

accept the document for filing because it had already denied review and entered

judgment, and the case was closed. (App., Ex. 21 at 121 [Doc. No. 12-2].)[4]

## II.    PETITION FOR WRIT OF HABEAS CORPUS

Thomas petitioned for a writ of habeas corpus under 28 U.S.C. § 2254 on July 12,

2017.  (Pet. [Doc. No. 1].)  He argues that his rights to equal protection and/or due

process under the Fourth and Fourteenth Amendments were violated when (1) the

Minnesota Court of Appeals did not sufficiently evaluate or respond to the supplemental

grounds for appeal he submitted on his own behalf; (2) the trial court erred in convicting

him when the State offered no evidence beyond accomplice testimony; (3) the trial court

erred by finding that circumstantial evidence was sufficient to corroborate accomplice

testimony; (4) the trial court erred in admitting Rule 404 character evidence; (5) the trial

court erred when it denied him the opportunity to cross-examine a police investigator;

and (6) the State initiated an unlawful *ex parte* communication when it subpoenaed a co-

---

[4]  Thomas apparently made two more attempts to raise additional arguments with the
Minnesota Supreme Court, but his attempted filings were rejected on the same grounds.
(App., Ex. 21 at 122-23 [Doc. No. 12-2].)  The attempted filings themselves are not
included in the record before this Court.

defendant.  (Notice at 6-10 [Doc. No. 1-1].)  The State argues that the petition should be denied with prejudice because Thomas's claims have not been exhausted and are now procedurally defaulted.  (Resp. [Doc No. 11].)

### A.    Legal Standards

A writ of habeas corpus enables a prisoner to appear before the court to challenge the legality of his confinement and, if successful, obtain his release.  *Preiser v. Rodriguez*, 411 U.S. 475, 485 (1973) ("[T]he writ of habeas corpus [is] a remedy . . . from any confinement contrary to the Constitution or fundamental law.").  The right to petition for habeas relief is a foundational legal principle in the American system, *see* U.S. Const. art. 1 § 9, and has been recognized as "an integral part of our common-law heritage."  *Preiser*, 411 U.S. at 485.  However, the right is not absolute and has been shaped by common law doctrine and federal statutes.  *See* 28 U.S.C. §§ 2241-2255; *see also, e.g.,* Antiterrorism and Effective Death Penalty Act, Pub. L. No. 104-132, 110 Stat. 1214 (1996).

One limitation on the right to habeas review is the requirement of exhaustion. 28 U.S.C. § 2554(b).  Federal courts may entertain a habeas petition brought by a state prisoner only if the prisoner has exhausted all available state court remedies relating to those claims.  *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999).  A claim is exhausted when the petitioner "has afforded the highest state court a fair opportunity to rule on the factual and theoretical substance of his claim."  *Ashker v. Leapley*, 5 F.3d 1178, 1179 (8th Cir. 1993).  The highest state court is afforded that opportunity only when the petitioner invokes "a specific federal constitutional right, a particular constitutional

10

provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue in a claim before the state courts." *McCall v. Benson*, 114 F.3d 754, 757 (8th Cir. 1997) (quotation and quotation marks omitted).

Another limitation on the right to habeas review is the procedural default principle. In general, federal courts may not hear habeas petitions where the claims have been procedurally defaulted. *Coleman v. Thompson,* 501 U.S. 722, 750 (1991). A claim is procedurally defaulted when a habeas petitioner failed to raise it before the state courts and the state courts can no longer review it at that point because an "independent and adequate state procedural rule" precludes further litigation of the claim. *Coleman v. Thompson,* 501 U.S. 722, 749-50 (1991). In other words, procedural default occurs when a state petitioner raises an unexhausted claim in his federal habeas petition but, due to a procedural rule, has missed the window to go back and exhaust the claim. In that situation, the Court then must typically dismiss the defaulted claim with prejudice. *Armstrong*, 418 F.3d at 927 (indicating that procedural default "prevents federal habeas corpus review of the defaulted claim").

Minnesota has an independent and adequate procedural rule precluding further litigation of claims: "[W]here a direct appeal has once been taken, all matters raised therein, and all claims known but not raised, will not be considered upon a subsequent petition for postconviction relief." *State v. Knaffla*, 243 N.W.2d 737, 741 (Minn. 1976)). There are two exceptions to the *Knaffla* rule: "(1) the claim is novel or (2) the interests of fairness and justice warrant relief." *Andersen v. State*, 830 N.W.2d 1, 8 (Minn. 2013). When the *Knaffla* rule would bar an individual from raising his claims in state court

11

because he did not raise them previously on direct appeal, those claims are procedurally defaulted in federal court. *Browder v. Lakes*, No. 15-cv-4071 (PAM/JJK), 2016 WL 4032638, at *4 (D. Minn. Apr. 1, 2016), *R. & R. adopted*, 2016 WL 4046713 (D. Minn. July 27, 2016); *Buckingham v. Symmes*, No. 11-cv-2489 (PJS/SER), 2012 WL 3611893, at *2 (D. Minn. Aug. 21, 2012).

If a claim is procedurally defaulted on federal habeas review, a federal court may hear the petition only under two limited circumstances: (1) if the petitioner can demonstrate cause for the procedural default and actual prejudice resulting from the alleged violation of federal law; or (2) if the court's failure to consider the claim will result in a fundamental miscarriage of justice. *See McCall,* 114 F.3d at 758 (citing *Coleman,* 501 U.S. at 750). To establish cause for the default, a petitioner generally must "show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To establish prejudice, the petitioner "must show that the errors of which he complains 'worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" *Ivy v. Caspari*, 173 F.3d 1136, 1141 (8th Cir. 1999) (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)) (emphasis in *Ivy* omitted). A court need not consider prejudice unless the petitioner demonstrates cause. *McCall,* 114 F.3d at 758.

The second exception—miscarriage of justice—is available only when the petitioner establishes that a constitutional violation likely caused the conviction of an innocent person. *Id.* (citing *Brownlow v. Groose*, 66 F.3d 997, 999 (8th Cir. 1995)).

12

If neither exception applies, the procedural default cannot be excused, and the court should deny the petition without reaching the merits of the claims. *See Carney v. Fabian,* 441 F. Supp. 2d 1014, 1029 (D. Minn. 2006).

### B.    Discussion

Respondent argues Thomas did not exhaust any of his claims because he failed to present them at one or both levels of his state court appeal, and further argues that all of his claims are procedurally defaulted because he may no longer raise them in state court now that he has completed his direct appeal.  (Resp. at 15-18 [Doc. No. 11].)  Thomas contends he did exhaust his claims in the state courts and, further, that in his Petition for Review to the Minnesota Supreme Court, he explicitly preserved the right to raise the claims he now advances in his habeas petition.[5]  (Pet. Reply at 2-3 [Doc. No. 16]; Ex. 18, Pet. Review at 115.)  Therefore, Thomas asserts his claims are neither unexhausted nor procedurally defaulted.  The Court will analyze each claim in turn.

### 1.    Whether the Minnesota Court of Appeals Denied Thomas's Right to Equal Protection by Failing to Consider the Arguments Made in His Pro Se Supplemental Brief

Thomas argues the Minnesota Court of Appeals violated his right to equal protection under the Fourteenth Amendment by focusing exclusively on his appellate

---

[5]  In his Petition for Review to the Minnesota Supreme Court, Thomas included the following: "Preserving Rights. Because the Lower Court has not addressed the issues from Petitioner Perspective, Petitioner preserves his rights to further address the arguments from his perspective at a later function, due to the Supreme Court not being an Error correcting Court." (App., Ex. 18 at 179.) The Court notes at the outset that including language that purports to "preserve rights" does not operate either to excuse the failure to exhaust claims in state court or to overcome a procedural default as to claims that were not exhausted.

attorney's arguments and failing to consider and respond specifically to all of the arguments Thomas raised in his pro se supplemental brief. (Notice at 6 [Doc. No. 1-1]; Mem. Supp. Habeas Pet. 2-3 [Doc. No. 5].) Although it is difficult to discern precisely what class of individuals he believes was more favorably treated than he was by the Court of Appeals, he appears to posit two respects in which his equal protection rights were violated: (1) that the Court of Appeals accorded his arguments less consideration than his lawyer's, thus undermining his right to proceed pro se, and (2) that in a case involving a female defendant, the Minnesota Supreme Court, after overturning the Court of Appeals' decision to reverse her conviction on a particular ground, ordered the Court of Appeals to consider the other grounds she had asserted on appeal. *State v. Vasko*, 889 N.W.2d 551 (Minn. 2017); (Mem. Supp. Habeas Pet. 2-3 [Doc. No. 5].)

Unfortunately, while Respondent argues conclusorily that Thomas failed to exhaust all of his claims, it does not address exhaustion in detail with respect to each claim; thus, it falls to the Court to do so. To fairly present a claim to the state court, a petitioner must "refer to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue in a claim before the state courts." *Myre v. Iowa*, 53 F.3d 199, 200–01 (8th Cir. 1995) (internal quotation marks omitted). While it is true that Thomas's Petition for Review did not cite the Fourteenth Amendment and did not use the words "equal protection," it did cite *Douglas v. California*, 372 U.S. 353, 357 (1963), which held that the indigent appellants were denied equal protection under the Fourteenth Amendment when they were not provided counsel to assist them in making a preliminary showing

14

regarding the merits of their appeal.  (App., Ex. 18 at 113.)  Thus, Thomas cited "a federal constitutional case" that was solely and explicitly decided on the basis of equal protection in connection with indigent appeals, and argued that his arguments were not afforded the same attention as his lawyer's.  Moreover, he could not have raised the claim at any earlier level of state appellate review, as it was the Minnesota Court of Appeals that, in his view, violated his right to equal protection, and his attempt to seek reconsideration of his pro se supplemental issues by that court was denied as not authorized by the Minnesota Rules of Civil Appellate Procedure.  Accordingly, while Thomas's failure in his Petition for Review to cite the Fourteenth Amendment or to articulate his argument as an equal protection argument makes it a close call, the Court finds Thomas fairly presented his equal protection claim to the Minnesota Supreme Court and rejects Respondent's argument that the claim should be dismissed for failure to exhaust.

But Thomas's equal protection argument fails on the merits, for at least two reasons.  First, there is no basis to conclude the Court of Appeals failed to consider the first six arguments that Thomas advanced in his pro se supplemental memorandum. To the contrary, the court permitted the filing of not only his pro se supplemental memorandum but a pro se supplemental reply memorandum, specifically to assure that his pro se arguments were fully briefed.  It acknowledged in its decision that "Thomas makes additional arguments for reversal in his pro se supplemental brief," 2017 WL 1375278 at *1, and referred to his first six arguments when it commented that they "relate to the two issues" the court had already discussed and decided, something the court could

15

not have recognized had it not read and considered the arguments.  Indeed, Thomas himself agrees that with regard to those six arguments, he and his counsel "argued the same issues."  (App., Ex. 18 at 113.)  The fact that the court did not explicitly call out and address each difference in "perspective" between his memorandum and the memorandum submitted on his behalf by his attorney does not show the court failed to consider his arguments.  (*Id.*)

Second, Thomas points to nothing to support his claim that his arguments were discounted by the Court of Appeals not because of their merits but on account of his race, gender, or pro se status.[6]  He argues that United States Supreme Court precedent requires that federal courts "construe a state prisoner's inartful pleading liberally in a pro se action" (Mem. Supp. Habeas Pet. at 1), and attempts to contrast that with Minnesota state court cases holding that "pro se litigants are generally held to the same standards as attorneys," (*id.* at 2, citing *Kennedy v. Kennedy*, No. A05-2397, 2006 WL 3490568, at *1 (Minn. Ct. App. Dec. 5, 2006)), and that arguments will be deemed waived on appeal if a pro se brief "contains no argument or citation to legal authority in support of the allegations" (*id.,* citing *State v. Krosch,* 642 N.W.2d 713, 719 (Minn. 2002)).  But even if

---

[6]  Thomas's reliance on *Vasko* is misplaced.  In that case, the Court of Appeals reversed a conviction on the basis of a single issue, which the Supreme Court found erroneous. Since the Court of Appeals had not addressed any of the other issues raised by the appellant, the Supreme Court directed it to do so to determine whether there were alternative grounds for reversal.  *Vasko*, 889 N.W.2d at 559-60.  That case does not stand for the proposition that the Court of Appeals somehow fails in its responsibility if it does not separately list and address each nuanced argument a party might make with regard to each issue.  Here, all of the issues raised by Thomas and his attorney were addressed by the Court of Appeals.

16

one accepts for the sake of argument that federal court precedent regarding liberal

construction of the federal court *pleadings* of a pro se prisoner could be considered to

supercede state court requirements regarding legal memoranda from pro se appellants,

nowhere did the Court of Appeals hold, or even imply, that it had refused to credit one of

Thomas's arguments because he had failed to comply with some rule, had expressed

himself inartfully, or had failed to observe some legal nicety.  In short, nothing in the

Court of Appeals decision suggests that it rejected Thomas's arguments on any basis

other than the merits.  Furthermore, the denial of his motion for reconsideration was

mandated by court rule, which grants *no* litigant a rehearing at the Court of Appeals,

regardless of race, gender, or pro se status.[7]

      At its core, Thomas's complaint is simply that he felt his arguments were more

compelling than his lawyer's, and more compelling than the Minnesota Court of Appeals

found them to be.  That is not sufficient to show that the court denied him equal

protection.

---

[7]  Thomas seems to read the denial of his motion to reconsider as somehow
acknowledging the merits of his arguments. "[W]e can appreciate [Judge Kalitowski]
admitting to not reviewing the totality of the brief and citing that to reconsider 'would
require the Court too substantially to change its opinion.'" (Mem. Supp. Habeas Pet. at 3
[Doc. No. 5], citing (and somewhat misquoting) Ex. 99.9 at 7 [Doc. No. 1-2].  In reality,
Judge Kalitowski was simply pointing out that since Thomas's motion for
reconsideration sought substantive changes in the court's opinion, it was in fact a request
for rehearing, which is not allowed in the Court of Appeals.  Minn. R. Civ. App. P.
140.01.

**2. Whether the Trial Court Denied Thomas's Right to Equal Protection by Entering Judgment Against Him When the State Offered No Evidence of His Guilt Beyond Accomplice Testimony**

Thomas next argues that his right to equal protection was violated when the trial court entered judgment against him notwithstanding that the State had failed to corroborate the accomplice testimony upon which his conviction was based. (Notice. at 6.) Thomas frames this error as an equal protection violation, arguing that he, unlike other similarly situated criminal defendants, was not allowed to benefit from state law that prohibits criminal convictions based solely upon uncorroborated accomplice testimony, particularly where the supposedly corroborating evidence is as consistent with the defendant's innocence as with his guilt. (Pet. at 6-8; Mem. Supp. Habeas Pet. at 3-5 (citing Minn. Stat. § 634.04; *State v. Wallert*, 402 N.W.2d 570, 571 (Minn. Ct. App. 1987)).)

After careful review of the record, the Court finds that Thomas did not timely raise this equal protection claim to either the Minnesota Supreme Court or the Minnesota Court of Appeals. Thomas did argue to the Minnesota Court of Appeals that it should reverse his conviction because the State did not present independent evidence linking Thomas to the crime outside of the accomplice testimony. (App., Ex. 8 at 59-65; App., Ex. 9 at 24-26, 35-39.) As support, he cited numerous Minnesota cases in which courts found accomplice testimony to have been corroborated by what Thomas contends was significantly more reliable evidence than what the State offered in its case against him. (*Id.*) And he argued to the Court of Appeals that the circumstantial evidence relied upon by the State to corroborate accomplice testimony was as consistent with his innocence as with

18

his guilt. (App., Ex. 9 at 29-32.) But his argument was grounded in Minnesota state criminal law and the particular facts of the case. (*Id.*) At no point in any of his briefs to the Minnesota Court of Appeals did he argue that his right to equal protection under the United States Constitution was violated when he was allegedly prevented from benefiting from state law requiring that convictions be based upon more than uncorroborated accomplice testimony, nor did he refer to a specific federal constitutional right, constitutional provision, federal law case, or state case addressing a pertinent federal constitutional issue or federal law in connection with this issue. *See Myre*, 53 F.3d at 200–01. . Furthermore, Thomas did not timely raise this claim in his Petition for Review to the Minnesota Supreme Court. His attempt to raise it after that court had denied his petition and closed the case was properly rejected by the court as untimely. Therefore, because Thomas did not fairly present the federal nature of this claim to the state courts, he did not exhaust it.

The Court additionally finds that this claim is procedurally defaulted. Because his appeal is completed, he no longer has the opportunity to raise this argument to the state courts in an appeal and it is thus procedurally defaulted. *See Knaffla*, 243 N.W.2d at 741. He raises no credible exception to the *Knaffla* rule, nor does he show either cause for the default and actual prejudice resulting from the alleged federal law violation, or a fundamental miscarriage of justice. *See McCall,* 114 F.3d at 758 (citing *Coleman,* 501 U.S. at 750). Accordingly, the Court will recommend dismissing this claim with prejudice.

### 3. Whether the Trial Court Denied Thomas's Right to Equal Protection by Finding the Circumstantial Evidence Introduced at Trial Sufficient to Corroborate the Accomplice Testimony

The distinction between this claim and the previous claim is not entirely clear. Thomas appears to argue that in concluding that the State supplied sufficient evidence to corroborate the accomplice testimony adduced at trial, the trial court denied him equal protection because he, unlike other similarly situated criminal defendants, was not allowed to benefit from the holding in *State v. Wallert.* (Notice. at 8; Pet. at 6-8; Mem. Supp. Habeas Pet. at 3-5.)

For the same reason discussed with regard to the prior claim, the Court finds that Thomas did not fairly present the federal nature of this claim either to the Minnesota Supreme Court or the Minnesota Court of Appeals. All of his arguments were grounded in Minnesota state law and the particular facts of the case. (*Id.*) At no point in his discussion of this issue before the Court of Appeals did Thomas invoke his right to equal protection under the U.S. Constitution. Furthermore, he did not raise the federal nature of this claim in his Petition for Review to the Minnesota Supreme Court, and his belated attempt to raise it after the court had denied his Petition for Review was rejected as untimely. As a result, the Court finds that Thomas failed to fairly present this claim and it was therefore not exhausted.

The Court additionally finds that this claim is procedurally defaulted. Because his appeal is completed, Thomas is not able to raise the equal protection claim that he omitted from his arguments on direct appeal. Therefore, Thomas's claim is procedurally defaulted under *Knaffla.* He raises no credible exception to the *Knaffla* rule, nor does he

show either cause for the default and actual prejudice resulting from the alleged federal law violation, or a fundamental miscarriage of justice. Accordingly, the Court will recommend dismissing this claim with prejudice.

### 4.  Whether the Trial Court Denied Thomas's Right to Equal Protection When It Erroneously Admitted Rule 404(b) Evidence

Thomas argues that the trial court erred in admitting under Rule 404(b) evidence of the two prior shootings because the State did not give notice of its intention to introduce the evidence. (Notice at 8-9; Mem. Supp. Habeas Pet. at 5-6.) Thomas frames this error as an equal protection violation on the basis that he, unlike other similarly situated criminal defendants, was not afforded advance notice of how the Rule 404(b) evidence was going to be used.

After careful review of the record, the Court finds that Thomas did not raise an equal protection claim to either the Minnesota Supreme Court or the Minnesota Court of Appeals that was premised on the State's failure to notify him about its intention to introduce Rule 404(b) evidence. Thomas argued to the Minnesota Court of Appeals that the trial court erred in admitting "*Spreigl* evidence" for a number of reasons. First, he argued it had no probative value for the purpose for which it was purportedly offered, *i.e.* to show motive and intent. (App., Ex. 8 at 67-70; App., Ex. 9 at 99-102.) Second, he argued that the potential for prejudice outweighed its probative value. (App., Ex. 8 at 71-73; App., Ex. 9 at 31-32.) Third, he argued that the evidence was admitted for the improper purpose of demonstrating identity and propensity. (App., Ex. 8 at 67-70; App., Ex. 9 at 32-34.) As support, Thomas cited numerous Minnesota cases analyzing the standards for

admission of prior bad acts under Rule 404(b). (*Id.*)  However, Thomas did not invoke a federal right or cite to a source of federal law in making these arguments, much less assert a claim of an equal protection violation.  Moreover, Thomas did not make an equal protection argument relating to this evidence in his Petition for Review to the Minnesota Supreme Court or even in his belated "Request to Add Law."  Therefore, the Court finds that Thomas failed to fairly present this claim and as a result, it was not exhausted.

The Court additionally finds that Thomas's claim is procedurally defaulted. Because his appeal is completed, Thomas does not have a second chance to raise this claim before the state appellate courts.  Therefore, Thomas's claim is procedurally defaulted under *Knaffla* and he raises no credible exception to the *Knaffla* rule that would enable the Court to consider his claim on the merits, or supply any other legitimate reason that the Court should excuse his procedural default.  Accordingly, the Court will recommend dismissing this claim with prejudice.

### 5.  Whether the Trial Court Denied Thomas's Right to Due Process by Denying Him the Opportunity to Cross-Examine a Police Investigator with Regard to Disciplinary Reports

Thomas argues that the trial court denied him due process when it did not allow him to cross-examine police officer Ken Jensen with internal affairs disciplinary reports. (Notice at 9; Mem. Supp. Habeas Pet. at 5-6.)  Thomas asserts the trial court thus denied him "a meaningful opportunity to present a complete defense" in violation of the Due Process Clause of the Fourth Amendment.  *Crane v. Kentucky*, 476 U.S. 683, 690 (1986). Thomas further contends that impeaching Officer Jensen with evidence of his prior

misconduct was particularly important to his defense because it was key to his ability to attack Officer Jensen's credibility.

After careful review of the record, the Court finds that although Thomas raised his due process claim relating to his inability to cross-examine Jensen to the Minnesota Court of Appeals, he did not raise it in his Petition for Review to the Minnesota Supreme Court. In his supplemental pro se brief to the Minnesota Court of Appeals, Thomas specifically invoked his constitutional right to due process when challenging the trial court's decision to limit the scope of his cross-examination of the State's witness. (App., Ex. 9 at 41.) In response to that argument, the Court of Appeals found that Thomas was not denied due process because the trial court "was permitted to limit cross-examination to relevant impeachment evidence" and "the record establishes that Thomas was able to impeach the officer with other evidence." *Thomas*, 2017 WL 1375278, at *6.

In his Petition for Review to the Minnesota Supreme Court, however, Thomas presented no argument that the trial court violated his due process rights by limiting his ability to cross-examine Officer Jensen. Instead, Thomas generally argued that the Minnesota Court of Appeals improperly failed to consider the first six arguments he made in his supplemental pro se memorandum of law, none of which included his argument regarding the cross-examination of Officer Jensen. (App., Ex. 18 at 113.) Thomas also attached as an addendum to his Petition for Review a "Motion to Correct Clerical Errors" that he filed with the Minnesota Court of Appeals. (First Suppl. App., at 2-7 [Doc. No. 40].) But that document raises no due process argument, and instead points out the ways he asserts the Minnesota Court of Appeals did not address the six

23

arguments relating to corroboration of accomplice testimony and prior bad acts evidence that he raised in his pro se supplemental brief. (*Id.*) Therefore, the Court finds that Thomas failed to present his due process claim to the Minnesota Supreme Court, and as a result, he failed to exhaust it.

The Court additionally finds that Thomas's due process claim is procedurally defaulted. Because his appeal is completed, Thomas does not have a second chance to raise his due process claim before the state appellate courts. Therefore, Thomas's claim is procedurally defaulted under *Knaffla*. He supplies no basis for the Court to conclude that he should be excused for his procedural default because he raises no credible exception to the *Knaffla* rule, or supply any other legitimate reason that the Court should excuse his procedural default. Accordingly, the Court will recommend dismissing this claim with prejudice.

**6. Whether the State Violated Thomas's Constitutional Rights by Initiating an Unlawful *Ex Parte* Contact When It Subpoenaed a Co-Defendant**

Thomas argues that the State violated his federal constitutional rights when it engaged in purported *ex parte* communications with a co-defendant by mailing him a subpoena without sending a copy to his attorney. (Notice at 9-10; Mem. Supp. Habeas Pet. at 7.) Thomas does not specify in his habeas petition which constitutional right the State purportedly thus violated.

After careful review of the record, the Court finds that Thomas did not raise a federal constitutional claim to either the Minnesota Supreme Court or the Minnesota Court of Appeals that was premised on the State's alleged *ex parte* communication with

24

a co-defendant, whether by service of a subpoena or otherwise.  Thomas argued to the

Minnesota Court of Appeals that the State improperly communicated with co-defendant

Deangelo Wilson when it sent a subpoena to him.  (App., Ex. 9 at 42.)  He also argued that

the State sent the subpoena to Wilson to pressure him to flip on Thomas, which Thomas

asserts is an improper purpose.  (*Id.*)  Thomas did not allege, however, that the State

violated his (Thomas's) federal constitutional rights by subpoenaing Wilson, nor did he

raise the issue indirectly by referring to a specific pertinent federal constitutional right,

constitutional provision, federal constitutional case, or state case addressing a pertinent

federal constitutional issue.  Furthermore, Thomas did not raise this particular claim in

his Petition for Review to the Minnesota Supreme Court, or even in his belated "Request

to Add Law."  Therefore, the Court finds that Thomas failed to fairly present his claim.

The Court additionally finds that Thomas's claim is procedurally defaulted.

Because his appeal is completed, he no longer has the opportunity to raise this argument

to the state courts in an appeal and it is thus procedurally defaulted.  *See Knaffla*,

243 N.W.2d at 741.  Thomas does not argue that his claims fit within an exception to the

*Knaffla* rule or supply any other legitimate reason that the Court should excuse his

procedural default. Accordingly, the Court will recommend dismissing this claim with

prejudice.

In sum, the Court finds that as to five out of six of Thomas's habeas claims, he

failed to exhaust the claims through the state court appellate process and is now

procedurally defaulted from doing so.  As to the sixth, while he exhausted the claim, it

fails on the merits.  Accordingly, the Court will recommend denying Thomas's habeas petition with prejudice in its entirety.

## III.    ADDITIONAL MOTIONS BROUGHT BY THOMAS

Thomas has additionally filed the following motions: Motion to Enforce Writ [Doc. No. 18], Expedited Motion to Enter Judgment or in the Alternative Release Petitioner Until Such Judgment is Entered [Doc. No. 19], Motion to Stay [Doc. No. 25], Motion to Stay in Abeyance [Doc. No. 29], Motion for Writ of Mandamus [Doc. No. 31], Motion to Amend Name and/or Correct Clerical Error [Doc. No. 37], Motion for Evidentiary Hearing [Doc. No. 42], Motion to Order the U.S. Marshal to Transport DeSean Lamont Thomas to USDC for Hearing on 07/27/2018 [Doc. No. 43]; and Motion to Amend Petition [Doc. No. 48].  The Court will consider each motion in turn.

### A.    Motion to Enforce Writ

Less than a week after the State filed its Response, Thomas moved the Court to promptly order his release.  (Mot. Enforce Writ [Doc. No. 18].)  Thomas argues that the requested relief was warranted, because the State failed to show cause for why the habeas petition should not be granted.  The Court considered each of Thomas's habeas claims in detail above and determined that the petition should be dismissed.  Therefore, the Court will recommend denying Thomas's Motion to Enforce Writ.

### B.    Expedited Motion to Enter Judgment or in the Alternative Release Petitioner Until Such Judgment is Entered

On October 10, 2017, Thomas again moved the Court to promptly order his release or alternatively release him until the Court renders a decision on his habeas

26

petition.  (Mot. Enter Judgment [Doc. No. 19].)  Thomas again argues that the requested

relief was warranted, because the State failed to show cause for why the habeas petition

should not be granted.  For the reasons already discussed, Thomas's Motion to Enter

Judgment or in the Alternative Release Petitioner Until Such Judgment is Entered should

be denied.

## C.    Motion to Stay

On November 16, 2017, Thomas filed a motion that made three requests.  First,

he moves the Court to grant his petition for a writ of habeas corpus based on his assertion

that he is a sovereign citizen and thus not subject to the Court's jurisdiction.  (Mot. Stay

at 1-2 [Doc. No. 25].)  The Eighth Circuit has definitively and repeatedly held that the

argument that a person may not be subjected to federal or state laws on the basis of

supposed sovereign citizenship is "meritless," "absurd," and "entirely frivolous."

*United States v. Watson*, 1 F.3d 733, 734 (8th Cir. 1993); *see also United States v. Jagim*,

978 F.2d 1032, 1036 (8th Cir. 1992); *United States v. Kruger*, 923 F.2d 587, 587–88

(8th Cir. 1991); *United States v. Schmitt*, 784 F.2d 880, 882 (8th Cir. 1986); *United States

v. Gerads*, 999 F.2d 1255, 1256 (8th Cir. 1993).  Therefore, the Court will recommend

denying his motion to grant the habeas petition on this basis.

Second, Thomas moves the Court to stay the proceedings. (Mot. Stay at 2.)

The Court has the power to stay proceedings in order to control its docket and conserve

judicial resources, *Clinton v. Jones*, 520 U.S. 681, 706 (1997), but the party seeking the

stay bears the burden of showing that such a course is appropriate.  *See Landis v. N. Am.*

27

*Co.*, 299 U.S. 248, 255 (1936).  Here, Thomas supplies no reason for why a stay should be granted.  Accordingly, the Court will recommend denying his motion for a stay.

Third, Thomas moves to amend his habeas petition.  (Mot. Stay at 2.) "An application for a writ of habeas corpus . . . may be amended or supplemented as provided in the rules of procedure applicable to civil actions."  28 U.S.C. § 2242. Rule 15 provides "a party may amend its pleadings with the Court's leave and that "the court should freely give leave when justice so requires."  Fed. R. Civ. P. 15(a)(2). "[T]here is no absolute right to amend," however, and a court may deny leave to amend "based upon a finding of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies in previous amendments, undue prejudice to the non-moving party, or futility."  *Baptist Health v. Smith*, 477 F.3d 540, 544 (8th Cir. 2007) (citation omitted).

Thomas's reason for moving to amend his petition is unclear, but it appears that he seeks leave to change his name in his pleadings.  (Mot. Stay at 2) ("Plaintiff requests this Court to . . . allow Plaintiff to amend the complaint to complement the axioms & the name change.")  Changing his name in his habeas petition would have no bearing on the merits.  Further, Thomas has not submitted a proposed amended pleading for the Court to evaluate.  Therefore, the Court finds that Thomas's motion to amend would be futile and should be denied for that reason.

## D.    Motion to Stay in Abeyance

On November 29, 2017, Thomas moved the Court to stay his habeas case to allow him time to secure his rights and non-obligatory status.  (Mot. Stay [Doc. No. 29].)  The

28

Court sees no purpose that would be served by a stay for the reasons cited by Thomas, and accordingly recommends denying the motion to stay.

### E.    Motion for Writ of Mandamus

On November 29, 2017, Thomas filed what he characterizes as a motion for a writ of mandamus in which he requests the Court to stay the instant case.  (Mot. Writ. Mandamus [Doc. No. 31].)  Thomas argues that a stay is necessary to allow him to cure a conflict of identity that he was in the process of litigating in Chisago County Court. Thomas provided no explanation for what he meant by conflict of identity or how it would affect the outcome of the instant proceedings.  Therefore, the Court finds no basis for granting Thomas's request for a stay on this ground and therefore will recommend denying the motion.

### F.    Motion to Amend Name and/or Correct Clerical Error

On May 15, 2018, Thomas filed a motion requesting that the Court amend all documents that refer to him as DeSean Thomas so that they refer to him by his new name, Pharoah El-Forever Left-I El-Amen. (Mot. Amend Name [Doc. No. 37].)  Thomas submitted as an exhibit a court order from the Chisago County District Count verifying that Thomas has in fact legally changed his name [Doc. No. 38].  Thomas, however, supplies no authority to support that he is entitled to having every document on the record amended to reflect his new name.  Such an onerous request would impose a significant strain on the Court's resources.  Therefore, the Court will recommend that his Motion to Amend Name and/or Correct Clerical Error be denied to the extent that it requests the Court to edit individual documents in the record.  However, the Court will recommend

granting this motion in part and ordering the Clerk's Office to change the case heading to reflect Thomas' new legal name.

### G.    Motion for Evidentiary Hearing

On June 25, 2018, Thomas filed a motion to request an evidentiary hearing.  (Mot. Evidentiary Hearing [Doc. No. 42].)  "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief."  *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007).  But federal habeas statutes "give[] state courts the opportunity to decide factual and legal questions in the first instance" which "ensures that evidentiary hearings in federal habeas proceedings are very rare."  *Cullen v. Pinholster*, 563 U.S. 170, 207 (2011).  Here, Thomas argues that the parties' submissions raised factual issues that warrant an evidentiary hearing.  He also argues, as he has at various other points in these proceedings, that the State failed to show cause why his habeas petition should not be granted and that failure supports his request for an evidentiary hearing.  Based on the foregoing arguments, the Court finds that Thomas has failed to identify a basis for the Court to conclude that hearing would have enabled him to prove the petition's factual allegations.  Although he contends conclusorily that factual issues might be clarified by the hearing, he does not specify what those factual issues are.  Moreover, it is evident from the Court's review of his petition and the record, and in view of the findings described herein, that an evidentiary hearing would shed no light on issues that would

affect the outcome.  Accordingly, the Court will recommend that Thomas's Motion for an

Evidentiary Hearing be denied.

**H.   Motion to Order the U.S. Marshal to Transport DeSean Lamont Thomas to USDC for Hearing on July 27, 2018**

Thomas moves the Court for an order requiring that U.S. Marshals Service

transport him to the United States District Court on July 27, 2018 for the requested

evidentiary hearing. Having already determined that an evidentiary hearing is not

appropriate, the Court will recommend denying this motion as moot.

**I.   Motion to Amend**

On July 25, 2018, Thomas filed a motion that makes three requests.  First,

he seeks leave to amend his petition to add his correct legal name.  (Mot. Amend [Doc.

No. 48].)  The Court has already addressed this request, and recommends denying it

except as to the case heading on the electronic docket. *See supra* Section III.F.

Second, Thomas additionally requests leave to amend his petition to add

information explaining that the substance of his arguments to the Minnesota Court of

Appeals and Minnesota Supreme Court were based on federal law.  He argues in

particular that he presented federal claims in his "Motion to Add Law" to his Petition

for Review to the Minnesota Supreme Court (Ex 99.8 at 3-6) and the "Motion to Correct

Clerical Errors" that he filed with the Minnesota Court of Appeals (First Suppl. App.,

at 2-7.).  He also argues that by invoking his right to due process and a fair trial under

state law, he was simultaneously invoking his corresponding rights under federal law.

31

The Court will recommend denying Thomas's motion to amend to include additional information regarding the federal nature of his claims. To fairly present a claim to a state court, a petitioner may invoke "a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue in a claim before the state courts." *McCall v. Benson*, 114 F.3d 754, 757 (8th Cir. 1997) (quotation and quotation marks omitted). Here, the Court notes that both documents were not timely filed to either court, and therefore were not fairly presented for the courts' consideration. Furthermore, the Court has carefully examined Thomas's filings before each state appellate court and, even construing them liberally, determined that he did not fairly present the federal nature of five of his six claims. Therefore, the Court will recommend denying Thomas's motion to amend his complaint to include additional information.

Lastly, Thomas requests that the Court issue an injunction ordering Respondent to produce affidavits to him and the Court from an apparent alibi witness, Jasmine Conley, and three other unnamed witnesses who purportedly attested that Wilson and Martinez recanted the statements they made at trial regarding the events that took place on March 30, 2012. (Addendum at 2 [48-1].) Thomas contends that Respondent "confiscated" these affidavits from him and refuses to return them despite his requests. Thomas additionally claims the affidavits would prove his actual innocence, and thus provide a basis for the Court to consider the substance of his habeas claims even if they are procedurally defaulted. *See Brownlow v. Groose*, 66 F.3d 997, 999 (8th Cir. 1995) (the exception for "miscarriage of justice" is available only when the petitioner

32

establishes that a constitutional violation likely caused the conviction of an innocent person); *Herrera v. Collins*, 506 U.S. 390, 404 (1993) ("a claim of 'actual innocence' is . . . a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits.")

The Court recommends denying Thomas's request, for several reasons. First, his motion comes far too late. Thomas's habeas petition has been fully briefed since Thomas filed his reply to the Respondent's Response on September 15, 2017. [Doc. No. 16.] He claims to have had this information demonstrating his "actual innocence" in his possession (presumably at or before the time he filed his habeas petition, since he does not allege it just recently came to his attention), and that it was "confiscated" at some unspecified point by Respondent, yet he inexplicably waited more than nine months after briefing was complete (and after filing numerous motions on a variety of other issues), to raise this issue with the Court.

Second, to the extent the request could be interpreted as seeking to compel discovery, Rule 6(a) of the Rules Governing Section 2254 Cases requires a showing of good cause before a court will authorize a party to conduct discovery under the Federal Rules of Civil Procedure. *See Bennett v. Blue Earth Cty. Dist. Court*, No. 16-CV-3054 (WMW/SER), 2017 WL 957439, at *5 (D. Minn. Feb. 2, 2017), *report and recommendation adopted*, No. 16-CV-3054 (WMW/SER), 2017 WL 963155 (D. Minn. Mar. 9, 2017). Thomas did not seek an order from this Court authorizing him to conduct discovery, nor is there any indication that even without an order he attempted to conduct discovery by properly employing the mechanisms provided by the Federal Rules of Civil

33

Procedure.  Furthermore, he has not established the requisite good cause.  He has not

identified the three witnesses that purportedly authored the affidavits.  He has not

demonstrated that the information contained in the affidavits was not available at the time

of trial or before the conclusion of his direct appeal.  Perhaps most important, the state

postconviction court examined at length, including by an evidentiary hearing, the

question of whether Martinez's recantation was credible, and concluded it was not.

(App., Ex. 5 at 26 [Doc. No. 12-1].)  That finding was upheld by the Minnesota Court of

Appeals.  *State v. Thomas,* 2017 WL 1375278 at *7.  And in his Petition for

Postconviction Relief, Thomas's own attorney acknowledged that Martinez's testimony

at trial was significantly more important to the outcome than was Wilson's.  (App., Ex. 3

at 13-14 [Doc. No. 12-2].)  Thus, even if Thomas had timely made the instant request,

there is no reason to think that the alleged affidavits would enable Thomas to meet the

exceedingly high threshold for demonstrating that a constitutional violation likely caused

the conviction of an innocent person.[8]

For these reasons, the Court will recommend denying Thomas's request for an

order compelling production of the affidavits.

---

[8]  To raise a claim of actual innocence, "the petitioner's allegations of constitutional error
must be supported 'with new reliable evidence . . . that was not presented at trial.'"
*Bowman v. Gammon*, 85 F.3d 1339, 1346 (8th Cir. 1996) (quoting *Schlup v. Delo*,
513 U.S. 298, 324 (1995)).  The petitioner must also establish "that it is more likely than
not that no reasonable juror would have convicted him in the light of the new evidence."
*Bowman*, 85 F.3d at 1346. Thus, "the actual innocence exception requires review of
procedurally barred, abusive, or successive claims only in the narrowest type of case--
when a fundamental miscarriage of justice would otherwise result."  *Id.*

## IV.    Certificate of Appealability

Before appealing a final ruling on a federal habeas petition, a state prisoner must be granted a certificate of appealability ("COA").  28 U.S.C. § 2253(c)(1)(A); Fed. R. App. P. 22(b)(1).  The Court cannot grant a certificate unless "the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The applicant must show that the issues to be raised on appeal are "debatable among reasonable jurists," that different courts "could resolve the issues differently," or that the issues otherwise "deserve further proceedings."  *Flieger v. Delo*, 16 F.3d 878, 882–83 (8th Cir. 1994).

The Court finds it unlikely that any other court, including the Eighth Circuit Court of Appeals, would decide Thomas's claims any differently than recommended here.  Thomas has not identified, and the Court cannot independently discern, anything novel, noteworthy, or worrisome about this case that warrants appellate review.  The Court therefore recommends that Thomas not be granted a COA in this matter.

## V.    Recommendation

Based on the foregoing, and on all of the files, records, and proceedings herein,

**IT IS HEREBY RECOMMENDED** that:

1. Petitioner DeSean Thomas's Petition [Doc. No. 1] be **DENIED**;

2. Petitioner DeSean Thomas's Motion to Enforce Writ [Doc. No. 18] be **DENIED**.

3. Petitioner DeSean Thomas's Expedited Motion to Enter Judgment or in the Alternative Release Petitioner Until Such Judgment is Entered [Doc. No. 19] be **DENIED**.

4. Petitioner DeSean Thomas's Motion to Stay [Doc. No. 25] be **DENIED**.

5. Petitioner DeSean Thomas's Motion to Stay in Abeyance [Doc. No. 29] be **DENIED**.

6. Petitioner DeSean Thomas's Motion for Writ of Mandamus [Doc. No. 31] be **DENIED**.

7. Petitioner DeSean Thomas's Motion to Amend Name and/or Correct Clerical Error [Doc. No. 37] be **GRANTED IN PART** to direct the Clerk's Office to change the case heading to reflect Thomas's new legal name and **DENIED IN PART** in all other respects.

8. Petitioner DeSean Thomas's Motion for an Evidentiary Hearing [Doc. No. 42] be **DENIED**.

9. Petitioner DeSean Thomas's Motion to Order the U.S. Marshal to Transport DeSean Lamont Thomas to USDC for Hearing on July 27, 2018 [Doc. No. 43] be **DENIED AS MOOT**.

10. Petitioner DeSean Thomas's Motion to Amend [Doc. No. 48] be **DENIED.**

11. This matter be **DISMISSED WITH PREJUDICE**

12. No certificate of appealability be issued.

Dated: July 27, 2018                     s/ *Hildy Bowbeer*
                                         HILDY BOWBEER
                                         United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under D. Minn. LR 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).